ARTHUR WYATT
Chief, Narcotic and Dangerous Drug Section
ANDREA GOLDBARG
Deputy Chief
Narcotic and Dangerous Drug Section
ANTHONY J. NARDOZZI
Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division, U.S. Dept. of Justice
        145 N Street, NE, 2nd Floor, East Wing
        Washington, DC 20530
        Telephone: (202) 598-6481
        Facsimile: (202) 514-6112
        E-mail:   Anthony.Nardozzi@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. SA CR 15-038-JLS |
| Plaintiff, | GOVERNMENT'S POSITION RE: SENTENCING FOR DEFENDANT OSWALDO DE JESUS MIRAMONTES-DIAZ |
| v. | |
| OSWALDO DE JESUS MIRAMONTES-DIAZ, et al., | |
| Defendants. | |

        Plaintiff United States of America, by and through its

counsel of record, the United States Attorney for the Central

District of California, hereby files its position re: sentencing

for defendant OSWALDO DE JESUS MIRAMONTES-DIAZ.  The

government's response and position are based upon the attached

//

//

Memorandum of Points and Authorities, the Presentence

Investigation Report, and the files and records in this case, as

well as any evidence or argument that the Court may wish to

consider at the hearing on this matter.

DATED:  July 29, 2016          Respectfully submitted,


                               ARTHUR WYATT
                               Chief

                               ANDREA GOLDBARG
                               Deputy Chief


                               _____/s/_____
                               ANTHONY J. NARDOZZI
                               Trial Attorney

                               Attorneys for Plaintiff
                               United States of America

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

I.   <u>Factual and Procedural Background</u>

On May 19, 2016, defendant OSWALDO DE JESUS MIRAMONTES-DIAZ ("defendant") pleaded guilty to count one of the indictment charging him with Conspiracy to Distribute over five kilograms of Cocaine, in violation of Title 21, United States Code, Section 846.  (PSR ¶¶ 3-4.)[1]  In the plea agreement, and at the change of plea hearing, defendant admitted to the following:

> On or about August 30, 2013, defendant Oswaldo DeJesus Miramontes-Diaz conspired with co-defendant La Sean Louis West and others to possess with intent to distribute cocaine, a schedule II narcotic drug controlled substance. Defendant Miramontes-Diaz delivered cocaine to co-defendant West. Specifically, defendant Miramontes-Diaz met co-defendant West outside of an apartment building in Hollywood, California, within the Central District of California ("the building"). Defendant Miramontes-Diaz picked up co-defendant West in defendant Miramontes-Diaz's vehicle so that co-defendant West could allow defendant Miramontes-Diaz's vehicle's entry into the building's garage in order to deliver the approximately 48.7 kilograms of cocaine. Defendant was aware that he was delivering 48.7 kilograms of cocaine to a co-conspirator in an apartment within the building.
> This apartment was later searched and law enforcement officers recovered approximately $2.5 million in United States currency, a money counter, a digital scale with a white powdery substance, a heat sealer, cellophane, and several cellphones. (Plea Agreement at 6-7.)

---

[1] "PSR" refers to the Presentence Report prepared by the United States Probation Office.

1

II.   The Presentence Report

      The PSR calculates the base offense level as 32, pursuant to U.S.S.G. §§ 2D1.1 and then applies a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), as well as an additional one-level reduction for assisting authorities in the investigation of his own misconduct under U.S.S.G. §§ 3E1.1(b) for a total offense level of 29.  (PSR ¶¶ 25, 34-36.) Therefore, the government believes that the total offense level in this case should be 29.  The defendant is also facing a 120 month mandatory minimum sentence with a maximum term of life in prison under 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(a).

      The PSR also calculates defendant's criminal history category as I based on zero criminal history points.  The government has no objection to this calculation.  With an offense level of 29 and a criminal history category IV, the applicable guidelines range should be 87-108 months.  For the reasons stated below, the government believes imposition of the 120 month mandatory minimum sentence is necessary and reasonable in this case.

III.  Section 3553(a) Factors

      The statutory factors under Title 18, United States Code, Section 3553(a) as well as the 120 month mandatory minimum

2

sentence with a maximum term of life in prison under 21 U.S.C. § 846 and 21 U.S.C. § 841(b)(1)(a) warrant a sentence of 120 months imprisonment.  Namely, the nature and circumstances of the offense, as well as the history and characteristics of the defendant, necessitate a sentence of 120 months imprisonment.

A.   The Nature and Circumstances of the Offense

Title 18 U.S.C. § 3553(a)(1) states that the Court shall consider the "nature and circumstances of the offense."  The conduct here supports a sentence of 120 months, followed by a five-year term of Supervised Release.

On August 30, 2013 the defendant attempted to supply nearly 50 kilograms of cocaine, a dangerous and destructive street drug, in exchange for approximately $2.5 million. (Plea Agreement at 6-7.)  Co-defendant, Laseasn Louis West, was observed exiting an apartment building in Hollywood, California ("the building") by law enforcement.  (Exhibit A at 2.)  Law enforcement observed the defendant meet with co-defendant, West, outside of the building.  (Exhibit A at 3.) Law Enforcement observed co-defendant West enter the vehicle of defendant Miramontes-Diaz, a Volvo XC-90 sport utility vehicle with an open and visible rear storage area.  (Exhibit A at 3.)  The vehicle proceeded towards the garage of the building.  (Exhibit A at 3).  Co-defendant West facilitated

entry of the vehicle by using a garage door opener to access the building's garage.  (Exhibit A at 3.)

Once in the building's garage, the defendant and co-defendant West exited the vehicle.  (Exhibit A at 3-4.)  At that time, the defendant and co-defendant West were stopped by law enforcement.  (Exhibit A at 3-4.)  Upon questioning by law enforcement, the defendant and co-defendant West denied knowing one another despite being observed by law enforcement officials in the same vehicle.  (Exhibit A at 4.)  Law enforcement searched the rear storage area of the vehicle with the consent of co-defendant West and two large cardboard boxes consisting of 24 packages containing 48.7kg of cocaine were recovered.  (Exhibit A at 4.)

By speaking with building personnel, law enforcement learned that the parking spots in the garage were assigned to specific apartment units.  (Exhibit A at 5.)  Law enforcement learned that the spot that the vehicle occupied by the co-defendants was parked in was assigned to apartment # 1105. (Exhibit A at 5.)  Pursuant to a search warrant, apartment # 1105 was searched and approximately $2.5 million in United States currency, a money counter, a digital scale with a white powdery substance, a heat sealer, cellophane, and several cell phones were recovered.  (Exhibit B and Exhibit C.)

4

Defendant drove a car carrying close to 50 kilograms of cocaine in the trunk, communicated with his co-defendant so that he could access the building garage, and if not for the interdiction by law enforcement, he would have exchanged the significant quantity of cocaine for approximately $2.5 million. Being entrusted with the transport of nearly 50kg of cocaine and then, subsequently, approximately $2.5 million demonstrates the level of trust and experience the defendant has within the overall drug distribution conspiracy. Accordingly, it is clear that as the supplier of a large amount of cocaine that was to be exchanged for a large amount of money, the defendant's role in the instant offense is integral.

B.   The History and Characteristics of the Defendant

Section 3553(a)(1) further states that the Court shall consider the "history and characteristics of the defendant." A review of defendant's criminal record reveals that he has a troubling history of convictions beginning in 1994, when, at the age of 20 he was convicted for minor in public premises, and received 36 months of probation.  (PSR ¶ 41.)  Defendant, at the age of 21 and while on probation for his first conviction, was convicted of possession of marijuana for sale, and received 180 days in jail and 36 months of probation.

5

(PSR ¶ 42.)  Two years later defendant would be arrested for conspiracy to possess marijuana for sale, again on probation and this time for his first drug related conviction. (PSR ¶ 46.)

Defendant was arrested on drug charges again at the age of 35 for possession of marijuana for sale.  (PSR ¶ 47.) Defendant was found in a residence that was searched, which resulted in finding 32 pounds of marijuana, around $11,000 and a counting machine.  (PSR ¶ 47.) During the same investigation, Defendant was found to have close to $1,500 cash on him, while his residence was searched and $90,000 and a pay and owe ledger were found.  (PSR ¶ 47.) Due to the aforementioned convictions being outside the applicable time period, they do not count toward defendant's criminal history level.  (PSR ¶¶ 41-47.) Regardless, the prior criminal convictions and arrests attributed to defendant are factors to be considered for sentencing purposes as it relates to the defendant's history and personal characteristics. Based on his criminal history and the instant offense, defendant still poses a threat to the community at large.  (PO Recommendation at 4.)

The defendant has a criminal history consisting exclusively of drug related convictions.  The defendant's

criminal history extends to additional drug arrests that did not result in conviction. While none of the convictions or arrests in this defendant's criminal history are comparable to the instant offense, the defendant's continuous association with drug distribution are troubling.

C.   Title 18 U.S.C. Section 3553(a)(2)

18 U.S.C. § 3553(a)(2) states that the Court shall consider the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant." The defendant has demonstrated his inability to show respect for the law by engaging in the instant criminal conduct. Thus, a sentence of 120 months imprisonment, followed by a five-year term of Supervised Release would adequately promote defendant's respect for the law, something defendant has demonstrated she is lacking by not only possessing controlled substances and distributing them on the streets, but bringing them into a correctional institution. Further, a sentence of 120 months imprisonment, followed by a five-year term of Supervised Release would provide just punishment and adequate deterrence for future criminal conduct of defendant. Such a sentence is necessary

7

to address defendant's criminal conduct and would impress upon defendant respect for the law.  Finally, the recommended sentence provides general deterrence to other narcotics traffickers by showing that their participation in narcotics distribution will result in substantial sentences.

IV.  <u>CONCLUSION</u>

The government submits that a sentence including a 120 months term of imprisonment is sufficient, but not greater than necessary, to punish defendant for his crime, promote respect for the law, deter defendant and others from committing similar crimes in the future, and protect the public.  The government therefore respectfully requests that the Court impose a term of imprisonment of 120 months, followed by a five-year term of Supervised Release.